***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, which has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of the parties.
3. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. An employee-employer relationship existed between plaintiff-employee and defendant-employer at all times relevant to this workers' compensation claim.
5. Sedgwick of the Carolinas is the servicing agent for the self-insured employer.
6. Plaintiff's average weekly wage is $492.52, yielding a compensation rate of $328.37.
7. Plaintiff sustained a compensable injury by accident on or about October 11, 2000 which was the subject of the Opinion and Award filed by Deputy Commissioner Stephenson on June 8, 2001. Defendant has been providing plaintiff with medical and indemnity compensation benefits pursuant to the June 8, 2001 Opinion and Award.
8. At the hearing, the parties submitted the following:
a. A packet of Medical, Rehabilitation and Functional Capacity Evaluation Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
b. A correspondence from MeadWestvaco to plaintiff dated June 1, 2004, which was admitted into the record, and marked as Stipulated Exhibit (3);
c. A correspondence from plaintiff to Ms. Susan P. Thompson, MeadWestvaco dated June 10, 2004, which was admitted into the record, and marked as Stipulated Exhibit (4);
d. A correspondence from counsel for defendant to plaintiff dated June 14, 2004, which was admitted into the record, and marked as Stipulated Exhibit (5), and;
e. A correspondence from plaintiff to counsel for defendant dated June 18, 2004, which was admitted into the record, and marked as Stipulated Exhibit (6).
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-four (44) years of age, with his date of birth being October 15, 1959.
2. As found in the prior Opinion and Award, plaintiff sustained a compensable back injury on October 11, 2000. At the time of his injury, plaintiff worked for defendant-employer as a laminator operator. Plaintiff's injury occurred as he was loading a machine and twisted, resulting in the immediate onset of a sharp pain in his right lower back. Following his injury by accident, plaintiff was ultimately diagnosed as having sustained a right paracentral herniated disc at the L2-L3 level with compression of the right side nerve root.
3. For his ongoing back problems, plaintiff's authorized primary treating physician has been Dr. Henry A. Pool, a surgeon. Plaintiff has also received authorized pain management treatment from Dr. Francisco A. Naveira. Dr. Naveira has opined that absent surgical intervention, plaintiff is likely to continue experiencing back pain the remainder of his life. However, Dr. Pool has opined that plaintiff's chronic pain was not correctable by surgery.
4. Plaintiff's primary method of obtaining relief from his chronic pain is through pain medication and by lying down. In fact, several times during a normal day, plaintiff has to lie down for extended periods to relieve his pain. The prescription pain medication prescribed by Dr. Naveira can cause some somnolence, and problems with memory and concentration. Dr. Naveira advises patients taking the medications he prescribed for plaintiff not to operate heavy machinery or drive.
5. A functional capacity evaluation conducted on September 10, 2002 revealed that plaintiff's blood pressure increased significantly, indicative of him experiencing significant pain. Additionally, this evaluation indicated that plaintiff should restrict his pushing, pulling, climbing crouching and reaching overhead activities, and that plaintiff is unable to climb stairs or ladders. Following the evaluation, Dr. Pool provided plaintiff with a Disability Certificate dated September 27, 2002, stating that plaintiff was presently unable to work in any capacity. Due to plaintiff's chronic pain and his functional capacity evaluation, Dr. Naveira has opined that it would be difficult for plaintiff to tolerate sitting more than six hours out of an eight-hour workday. Dr. Naveira has also opined that plaintiff's compensable chronic pain condition has not changed in any significant way during the period of his treatment.
6. In late November 2003, plaintiff fell on stairs at his home, breaking a bone in his foot. For this injury, on December 15, 2003, plaintiff underwent surgery to repair a fracture of the right fifth metatarsal by Dr. Justin M. Fowler. Plaintiff reported to Dr. Naveira a loss of control of his left leg that caused him to fall. This explanation is documented in Dr. Naveira's medical notes from January 28, 2004.
7. During his deposition, Dr. Naveira was asked whether there was any pathology that would explain how plaintiff could lose control of his left leg. Dr. Naveira noted that there were two possible pathologies that could explain how plaintiff lost control of his leg. One of the possible pathologies would involve the experiencing of pain from a non-motor component of a nerve in plaintiff's back. Another pathology would be related to plaintiff's compensable back injury.
8. Although in one portion of his deposition testimony Dr. Naveira stated that plaintiff's compensable back injury could (emphasis added) have caused his fall and broken ankle, he later testifies that the area of plaintiff's back for which he had provided treatment was more likelythan not (emphasis added) the cause of plaintiff's fall. The Full Commission finds that the totality of Dr. Naveira's causation opinion statements are sufficient upon which to find that plaintiff's fall and right ankle fracture were the direct result of and causally related to his October 11, 2000 injury by accident.
9. Following his October 11, 2000 injury by accident, plaintiff has experienced clinical depression. For plaintiff's depression and other related psychological problems, Dr. Jane L. Steiner, a psychiatrist, has been plaintiff's authorized treating physician. Dr. Steiner initially examined plaintiff on March 4, 2003 and diagnosed him as having experienced a single major depression episode. At the time of this initial examination, Dr. Steiner opined that plaintiff was unable to return to work in any position.
10. On June 18, 2004, Dr. Steiner noted some improvement in plaintiff's depression. As of June 18, 2004, Dr. Steiner found that plaintiff was still depressed, and was experiencing sleep problems, difficulty with concentration as well as anxiety and panic attacks. Additionally, Dr. Steiner opined that it would not be safe for plaintiff to work around heavy machinery. Dr. Steiner has opined that plaintiff's depression and related psychological problems were causally related to his chronic pain condition that resulted from his October 11, 2000 injury by accident. Dr. Steiner recommended that plaintiff be fitted with a mouth guard to prevent grinding of his teeth caused by anxiety, and this has been provided by defendant.
11. Based upon the credible lay and medical evidence of record, plaintiff's depression and related psychological problems as diagnosed by Dr. Steiner are the direct and natural result of and causally related to his October 11, 2000 injury by accident.
12. Defendants requested the July 2004 hearing as they were seeking permission to terminate plaintiff's disability benefits for his failure to accept suitable employment. It was defendants' contention that plaintiff was capable of performing the job duties of a production auditor. This position was offered to plaintiff in June 2004. However, by and through his attorney, plaintiff rejected this position. Defendants proceeded to hearing on the issue that plaintiff had refused suitable employment that was within his work restrictions and had been approved by his physician.
13. Plaintiff testified one reason he did not accept the job was due to the psychological issues he would face if he was required to return to work with the employer. Plaintiff also testified that he did not feel he was capable of working due to his back pain.
14. Following the hearing, plaintiff took the deposition of Dr. Steiner. Dr. Steiner is plaintiff's psychiatrist who had been treating plaintiff for depression and anxiety. Dr. Steiner testified plaintiff was not able to return to work when the job was offered to him in June 2004 due to his current depression and pain issues. Dr. Steiner also testified that plaintiff needed a custom-made tooth guard due to gritting his teeth. She said plaintiff was gritting his teeth as a result of anxiety, which was due to his job-related depression.
15. Based on Dr. Steiner's deposition testimony, defendants notified the Industrial Commission by letter dated October 29, 2004, that they were withdrawing their request for hearing and that they would provide the tooth guard recommended by Dr. Steiner.
16. Plaintiff has not been diagnosed with sleep apnea.
17. As the result of his October 11, 2000 injury by accident and related physical and psychological problems, plaintiff continues to be unable to earn any wages in any employment.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 11, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of and causally related to his October 11, 2000 injury by accident, plaintiff sustained a right ankle fracture that required surgical intervention. Id. Additionally, plaintiff's depression and related psychological problems as diagnosed by Dr. Steiner are the direct and natural result of and causally related to his October 11, 2000 injury by accident. Id.
2. As the result of his October 11, 2000 injury by accident and related physical and psychological problems, plaintiff is entitled to have defendant continue payments of ongoing total disability compensation at the rate of $328.37 per week until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As the result of his October 11, 2000 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, including treatment related to his right ankle fracture, depression, and other psychological conditions as diagnosed by Dr. Steiner. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendant shall continue to pay to plaintiff ongoing total disability compensation at the rate of $328.37 per week until such time as he returns to work or further Order of the Commission.
2. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his October 11, 2000 injury by accident, including treatment related to his right ankle fracture, depression and other psychological conditions as diagnosed by Dr. Steiner.
3. Defendant shall pay the costs.
This the 31st day of August 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER